Counsel, you may proceed. May it please the Court, Kirk Passage for Appellant UMG Recordings. Your Honors, we raise below and raise here three basic issues. Number one, under the personal injury coverage, is there disparagement? Number two, under the personal injury coverage, was there copyright infringement in an advertisement? And number three, was there property damage in the form of loss of use arising from an occurrence? The District Court disagreed with our position on all three. And it's important to note that we are dealing with a duty-to-defend case. Most of the authorities cited by American are duty-to-indemnify cases that have a much different standard. Is this Court recognized in the pension trust case? Is the California Court recognized in CNA casualty? Is the New York Appellate Court recognized in Ruter v. Ruter and Finn? All we need is two unsubstantiated words and an otherwise uncovered cause of action and an otherwise uncovered complaint. Now, their argument, principally, is that there was no occurrence here which would trigger the duty-to-defend. And specifically, Mr. Cohen's action of withholding the master was intentional. Isn't that a pretty difficult issue for you? I don't think so, Your Honor, with all due respect, for a couple of reasons. Number one, both the original complaint in the TBT lawsuit and the amended complaint brought clear distinctions between Mr. Cohen's activities and Island Def Jam's activities. Those complaints are replete with references about what Mr. Cohen did. He withheld things. He said things. He did things because he had a personal motivation to do them. Now, under all of the case law in vicarious liability, starting with this Court's decision in Dart Industries many years ago, it doesn't matter what level the person is. You have to have a board authorization or ratification. And their only criticism of Dart was to say that there was a 1987 Intermediate Court of Appeal decision from California that questioned Dart, that ignores the fact that this Court has cited Dart since then, as have a multitude of California appellate courts, including the one that we think is controlling, which is Downey Venture. All of those cases stand for the proposition that even if you have a high-level official, in the Fireman's Fund case, it was the city attorney who engaged in the intentional conduct. In Dart, it was the president of the company acting within course and scope of employment. Those cases are all consistent, even the cases involving law firms where partners took actions. It's one thing to say, is Mr. Cohen entitled to coverage? It's another thing to say, is UMG Recordings entitled to coverage, absent any evidence, and there was none in the record that the board of directors even knew about it, let alone authorized it or approved it. And that's the standard that's used for this purpose. Of course, it also begs the question of whether even Mr. Cohen's acts satisfy or do not satisfy the notion of occurrence defined to include an accident. I think we don't have to reach that because I think under the precarious liability standards. From the corporate point of view, this was not an intentional act. There's no evidence to show it was anything other than perhaps negligent oversight, if the board was supposed to have oversight of it. There's no evidence to show board action here. And there are plenty of California cases, including the sex abuse arena, the Lynette See case, for example, National Union versus Lynette See, where one person engaged in inappropriate sexual conduct and the insured was still found to be covered because vis-a-vis the insured, it was only negligence at most. The insured itself took no action. There is nothing here to show the requisite level of action by the corporation. As for Cohen himself, there are clearly three lines of cases in California at the intermediate appellate level. And I think it's important to note that the entire discussion that American launches on this notion of accident is based on three sets of cases. Intermediate appellate cases in California, some unpublished U.S. district court decisions, and some new district court decisions. What are the rules that district court provide on unpublished opinions? That they have no precedential value? They're not precedential, Your Honor. We certainly don't argue that the court can't consider them for whatever persuasive value they may have. And there was one California federal district court decision cited, and I think one from North Carolina. The other set of cases, and Judge Pragerson applied California law here, and there was no challenge to his application of California law. But the other set of cases that is cited by American is some New York cases. And those cases, by and large, as we said in our reply brief, are duty to indemnify cases, not duty to defend. When you look at the accident cases in California, there are at least five California Supreme Court cases that deal with the concept of is conduct intentional for purposes of eliminating coverage. Now, it is fair to say that most of those cases deal with Insurance Code Section 533. But that's the basic public policy section implied in every insurance policy that talks about whether an act is intentional or not. And so when you look at the cases, they go back and forth between accident occurrence cases, expected or intended cases, and Section 533 cases. What the California Supreme Court has said, and if you look at it, if you go back to the self-defense cases, for example, where there's justification for the act, it doesn't deprive you of coverage under a policy with an occurrence accident definition. There is evidence here to suggest that Mr. Cohen believed his actions were justified. There was no contract in place. Indeed, the Second Circuit ultimately reversed the judgment against Def Jam Island in this case. And so when the Second Circuit reversed it, it wiped out everything except the one little contractual point that wasn't appealed from, no copyright infringement, no interference with contract, no punitive damages, all of that wiped out by the Second Circuit. When you look at property damage, and that's the only place the occurrence definition is relevant, there is no requirement for an occurrence or an accident on personal injury. The policy is clear on that. The case law is unequivocal on that. Personal injury coverage can apply to intentional conduct. So even if you assumed, as your question posed, that Mr. Cohen's conduct was intentional, even if we assume that his conduct somehow becomes the intentional conduct of Island Def Jam and UMG Recordings, even if we make those two assumptions, it doesn't eliminate the question of coverage for disparagement or coverage for copyright infringement in an advertisement. The whole issue on the copyright infringement in an advertisement came down to one question. There was no dispute that there were affirmative claims for copyright infringement. The allegations were that some of the CMC recordings involving Joe Rule were used by Island Def Jam in that CD, the compact disc, and the DVD, which TBT said were the infringing DVD and the infringing compact disc. It was this thing called Irv Gotti Presents the Ink. And it was a collection of... Wasn't that TBT's product? This wasn't UMG's product. Your Honor, it was used. Part of this was TBT's product and part of it was not TBT's product. It was Irv Gotti and Murder Ink. And this was the dispute as to who had... Once the member of the band CMC who had been in jail got out of jail and Joe Rule went back and they made some additional new CMC recordings, there was a big debate over who had the right to do what with those recordings. And clearly the allegation is that TBT was going to do them, there was going to be a contract, it was signed by some people, but it was never delivered ultimately, and you got into a big fight over who had the right to those recordings. And then the allegation was in the amended complaint that Island Def Jam moved up the release date of something called The Temptation, The Last Temptation, and they put that on the release date that they had been promoting for the CMC album. When they did Irv Gotti Presents as a promotional device that was out there, the allegations were by TBT that that album was an infringing album because while TBT had granted permission under some licenses, it did so based on what it said were misrepresentations and it attempted then to revoke, in essence, its permission. That didn't work, the Second Circuit said, which is why the copyright infringement claim ultimately was rejected in the Second Circuit on appeal. But what you have is a claim on copyright infringement that this Irv Gotti CD and DVD were being used for promotional purposes to promote a whole slew of artists, one of whom was TBT's claimed artist CMC. But the record, certainly the complaint leaves open at least the possibility as a minimum that it was also promoting other artists from Island Def Jam and that's what makes it an advertisement. It was a compilation promotional disc saying a whole bunch of things are going to be released in the next few months, here's some things off of those things, you're going to want to buy them, you're going to like them. Indeed, even the Second Circuit on the appellate decision characterized these infringing, allegedly infringing product as teaser items and promotional items. That's what American would have found had it bothered to do the investigation the law required it to do before denying coverage. And that's what the Second Circuit found and that's what the evidence was when it was ultimately tried. They didn't have it because they decided to deny coverage doing nothing, applying apparently New Jersey law, if you believe the testimony of Mr. Stockman, their claims adjuster, which had nothing to do with anything. So the only real question is, was there the potential that this copyrighted material was used in something for promotional purposes? If it is absolutely clear on the record that there is no possibility because that's the test for the duty to defend, no possibility that it was used for promotional purposes, then they would have an argument to say they don't have to defend under personal injury coverage for copyright infringement used in an advertisement. If they could overcome that, then we would end up with the personal injury coverage for disparagement. And that does not require an advertisement. It simply requires statements that are liable or slander or that disparage in some way TVT or its goods or products or services. I don't think there's any argument that there's disparagement here because there were clear allegations of damage to goodwill. There were clear allegations that Island Def Jam and Mr. Cohen in particular made mischaracterizations to artists and to others about TVT. What Judge Pragerson looked at is he talked about what services it was that was disparaged. And with all due respect to Judge Pragerson, I think he missed one point. The point is that you can disparage a company. It doesn't just have to be the products. And that's what the J. Lamb decision that was talked about in our briefing, both our opening brief and our reply brief, dealt with. You can disparage the product. You can disparage the company at the same time. Now, a record company like TVT is more than someone that just promotes music. It is also someone that provides services to artists. One of the things it does is it gets artists to sign. It has an artist and repertoire department that develops the artist, that works with the artist, that records the artist, that produces the material, that promotes the material. To do that service for an artist, you have to be able to get your product released to the public. In the allegations, in fact, the language is nearly identical in the J. Lamb decision. It was very interesting to me when I went back and looked at that decision because when you look at that decision on disparagement, it is very similar to what American Mutual versus J. Lamb said. J. Lamb, that case involved intentional communications with customers, falsely stating that that company was selling product it had no right to and threatening litigation. Here, there are two sets of customers for a record company like TVT. One are the artists that want to retain TVT and be signed by TVT to release their product. The second set of customers is the buying public who want to buy, in this case, the CMC album. The disparaging statements that were alleged were that Island Def Jam told the artists, TVT doesn't have the ability to do this. It was stated in the TVT complaint that they mischaracterized their ability. It was framed, quote, the artists have advised TVT that they cannot risk delivery of the CMC album to TVT in light of co-incident admissions to them not to comply with their agreement. That's in the excerpt of record at 179 to 180. That's very much like the allegations made in the American Mutual versus J. Lamb case. Don't do it or we will sue you. The same kind of thing here. And the statement that was made in the TVT complaint was that Island Def Jam, actually it was Mr. Cohen they said, continually mischaracterized to the artists, TVT's efforts to protect its rights to put out the album. That's all about the kind of product delivery and service that a record company performs. It has to be able to deliver its product. It has to be able to deliver it to the public. And what Island Def Jam was accused to have done is to criticize, to mischaracterize TVT's ability to do the most fundamental feature of its business, deliver recorded music product to the public. That's disparaging services, but it's certainly disparaging TVT itself. In an American Mutual, that's all it takes. So the question is not whether ultimately there would have been a duty to indemnify had that judgment stuck. The question is was there a potential, were there at least a couple of words in this complaint that suggested the possibility of coverage. That's all we had to show was that mere possibility, that mere potential. They had the duty to show no possibility. That's the standard under Montrose Chemical. It's a little bit strange of a standard because it does in essence put the burden on them to show no possibility of coverage. But that's what the California Supreme Court has said. We believe that there is clearly disparagement here. We believe there's clearly copyright infringement in the promotional infringing DVD and the promotional infringing CD. And ultimately when it comes back to the starting point, there's not a single California Supreme Court case that supports their position on accident and intentional conduct. The Supreme Court case is starting with Gray, which is probably the most heavily cited insurance case rendered by the California Supreme Court, stands for the proposition that even if you do an intentional act, you do not lose coverage if the consequences were not intended or reasonably certain to happen. From the perspective of the insured who is seeking coverage. And if you look at the other cases, whether you're looking at Hogan, whether you're looking at Horace Mann, you have cases where people were charged and convicted of murder and it still did not jeopardize coverage. You have cases where someone was found liable for sex abuse, but there was still a duty to defend for battery, which is an intentional touching. Still a duty to defend in those cases. Some intermediate appellate courts have drawn the distinction that they raise. The California Supreme Court has not. And at the end of the day, when you look at it at its heart, if someone takes a drink and goes over the legal limit and then drives, they did intentional acts. That is a form of negligence. Negligence is covered. It has nothing to do with whether you did an intentional act or not. It has to do with whether you ultimately breached duties and whether you have a reasonable certainty or expectation that bad things will happen. If the court cases weren't sufficient, the draft in history and the commentary that we provided, which this court is permitted to consider, support the exact same conclusion. Are there any questions? I'll save the rest of my time, Your Honors. No questions at this time. You may reserve your time, Counsel. We'll hear from American Home. Good morning. May it please the Court. My name is Lawrence Klein. I'm here for American Home. Judge Scanlon, you're absolutely right on the issue of property damage. No matter how you M.G. I just asked a question, so perhaps we'll go ahead. The question. He speaks the right answer, though. The coverage grant is that the insurance applies to property damage only if the property damage is caused by an occurrence. Occurrence is defined as an accident. You look at this complaint, and it is rife with intentional conduct, not only by Mr. Kahn, but by Def Jam itself. It is replete with conduct that both entities intended the consequences that they were accused of by TBT, notwithstanding Mr. Passage's attempt to distinguish the cases. Under any set of cases that he has cited himself, the acts that have been alleged against or that were alleged by TBT against Island Def Jam and Lawyer Cohn is that they both acted intentionally. There was no allegation, as Dart arguably holds, and I believe it's distinguishable, but there's no allegation that Def Jam or UMG was vicariously liable for Mr. Cohn's acts. The complaint is very clear that Def Jam, through Mr. Cohn, but many other people, attorneys, et cetera, acted in concert, and Def Jam, all the causes of action are alleged against Def Jam. Not all the causes of action are alleged against Mr. Cohn. I had a question about the disparagement claim because it does not rest, as I understand the policy, on the need for accident. That's correct. Okay, so a claim for disparagement almost by definition includes some sort of intentional activity, and I wonder if you would just talk to me about why the complaint underlying this could not plausibly be viewed as including a potential claim for disparagement within the meaning of the policy. Why? Because the policy says that it covers injury arising out of oral or written publication of material that slanders or libels a person or organization or disparages a person's organization's goods, products, or services. So there has to be a disparagement of goods, products, or services. The only allegation in the complaint that UMG or Def Jam refers to is one sentence, that defendants have further, and this is Record 179, defendants have further sought to interfere with and destroy the relationship between TVT and the artist by without limitation continuously mischaracterizing to the artist TVT's efforts to protect TVT's rights to put out the CMC album. The key words there are mischaracterizing. That is not disparagement. The allegation was that UMG or Def Jam was wrong. Well, presumably all disparagement is viewed by the disparaged entity as wrong. But leaving that aside, the standard for duty to defend is pretty low, and when you started your answer you said, well, there's only one sentence, but all they need is one sentence, correct? That is correct, and my point is that that sentence doesn't get them there because mischaracterization just means it's wrong. It's very conceivable that what TVT was talking about was something else, and that is what this complaint is all about. It's conceivable, but it's also conceivable that it meant disparagement. If it's reasonably susceptible of two meanings,  that is true, but the mischaracterization here, put it into context, and it gives it the meaning. The meaning is that TVT was alleging that it had entered into an agreement or a series of agreements with Def Jam, and that Def Jam was reneging on those agreements because it wanted to get the money for this album, the CMC album for itself. So what the logical implication, and I submit there is no other implication, is what TVT was alleging is that Def Jam was saying, hey, we're just as good to put out this album, and TVT is okay with that because UMG was going to get the money anyway, or a good part of the money. But there's a second part of this sentence, and that it was, and the requirement, and it was TVT's efforts to protect TVT's rights, and so it was not anyone else's. It was not a disparagement of a goods, product, or service. Service has to be performed for another. Well, do you disagree with the concept that TVT performed services for the artists? That that was not alleged here. Well, I'm sort of asking you to respond to counsel's argument. Part of his argument was that TVT not only sold goods, but they also performed services for the artists who signed with them. Well, there's no evidence in the record exactly what TVT did, but the allegation in the complaint is that TVT, that they said, that they mischaracterized TVT's efforts to protect TVT's rights, not anybody else's rights. That's clear from the language of the complaint. It wasn't an allegation that it was a service for another. Even if you accept that TVT may perform services for another, that's not what was alleged in this complaint, and therefore the duty to defend was not triggered. I'd also like to address the copyright infringement in an advertisement, because UMG has tried to kind of have it both ways and blur the lines here. But the insuring agreement says clearly that we insure injury arising out of infringing upon another's copyright trade address or slogan in your advertisement. An advertisement is defined as a notice that is broadcast or published to the general public or specific market segments about your goods. UMG kind of does an about face in its reply papers and tries to characterize the album itself as promotional. But there's no evidence of that, and there's no allegation of that. Yes, there were allegations that that CD violated copyrights because UMG's right to use those songs had been obtained improperly under false pretenses. But the answer is that that CD is not about your goods that the definition of advertisement requires. It is the good itself. They were selling that CD, and the only thing that they alleged, and there's no disparagement at all. I'm sorry, there's no, let me, I'm confusing the concept, I'm sorry. The next point is that on the, that they made in their opening papers, is that the Irv Gotti CD announced the arrival of the CMC album. There is no allegation that that itself, that that announcement, was a copyright infringement. So what they're trying to do is cobble together two different things in order to meet the definition that is required under the policy. And that is that an advertisement is a notice about your goods. The selling of that CD was not about your goods or a notice about your goods. It was the goods itself. And that's the only thing that was alleged to have infringed on the copyright. If the court has no other questions, I will rest. Thank you. Any other questions? No questions, thank you. Mr. Passage, you have some reserved time. Thank you, Your Honor. Let's start with a basic proposition that both of the TBT complaints had more than one allegation that supports the possibility, all that were required to have, of a disparagement claim. It's not only the sentence that talked about continually mischaracterizing to the artist TBT's efforts to protect its rights to put out the album. Each complaint also says that TBT has suffered damage, including the loss of goodwill and reputation. What page are you on? It is the excerpt of record, three places, Your Honor. 108 at paragraph 3, 159 at paragraph 39, and 181 at paragraph 40. So there are multiple statements that there is a loss of customers, that there's a diminution of value, that there is a loss of goodwill and reputation. That's classic disparagement language, which they have always ignored from the get-go. Second point, this whole thing about promotion. They talk about what it may be and might be. They lose under that test. They have to show what it cannot be. They have to show that the Irv Gotti presents the ink. There's no possibility that it is to promote releases other than CMC. They have to show that it was only to promote the CMC album. Let me ask you sort of an overall question. As I understand your position in the litigation now, you have to persuade us of only one of your three bases, correct? Absolutely. Not all three? Not all three. Any one is sufficient. And that's well established, as long as there's something that's covered in the overall lawsuit that duty to defend would attach to the lawsuit. But there's something else that I think is worth noting here. In the amended complaint, and this is in the excerpt of record at page 179, paragraph 24, there are allegations. I'll just read the sentence, two sentences. Defendants have also sought wrongfully to misappropriate use of the new CMC songs on their own The Last Temptation release. Defendants have further sought to interfere with and destroy the relationship between TVT and the artist by, without limitation, continuously mischaracterizing to the artist TVT's efforts to protect TVT's rights to put out the CMC album. The case law we have cited, including Atlantic Mutual v. J. Lamb, and that's obviously one of the cases I commend to your attention. It is almost on all fours here. What Mr. Klein left out when he read the definition in terms of disparagement, he left out the fact that you can also disparage a third party. It doesn't just have to be their goods, products, or services. The definition is you can disparage the entity or person or their goods, products, or services. So if anything in here suggests the possibility of disparagement of TVT, they lose on the duty to defend. Thank you. Thank you, counsel. The case just argued will be submitted for decision, and the court will take its morning recess, about ten minutes.
judges: O'scannlain, Graber, Gibson